**TOWN OF EAST HARTFORD, CONNECTICUT, et al., Plaintiffs,**

**v.**

**Patricia Roberts HARRIS, Secretary of Housing and Urban Development, et al., Defendants.**

Civ. A. No. 77–1305.

United States District Court, District of Columbia.

April 21, 1978.

As Corrected May 8, 1978.

F. Timothy McNamara, Corp. Counsel, Town of East Hartford, Conn., Stephen L. Bluestone, Washington, D. C., for plaintiffs.

Mary Ann Clifford, U. S. Dept. of Justice, Washington, D. C., Robert P. Von Eigen, Dept. of Housing and Urban Development, Washington, D. C., for defendants.

## MEMORANDUM OPINION

SIRICA, District Judge.

### I. *Background Facts*

This case arises under Title I of the Housing and Community Development Act (HCD Act) of 1974, Pub.L. No. 93–383, 88 Stat. 633, 42 U.S.C. §§ 5301–16 (Supp. V 1975).[1] Title I creates a system of federal support to assist local communities in improving the quality of life for citizens in urban areas with low and moderate incomes.[2] The primary aims of Title I are to increase the supply of decent housing available to urban residents,[3] to expand and improve the level of community services,[4] to encourage the rational arrangement of residential, commercial, industrial and recrea-

---

1. This Act was recently amended by the Housing and Community Development Act of 1977, Pub.L. No. 95–128, 91 Stat. 1111. The 1977 Amendments are not involved in this lawsuit, however.

2. *HCD Act*, § 101, 42 U.S.C. § 5301 (Supp. V 1975).

3. *Id.*, § 101(c)(1–3), 42 U.S.C. § 5301(c)(1–3) (Supp. V 1975).

4. *Id.*, § 101(c)(4), 42 U.S.C. § 5301(c)(4) (Supp. V 1975).

tional land uses [5] and to strengthen communities by increasing the economic diversity of residents.[6]

These aims are carried out by a grant program.[7] Title I invites local governments to submit grant applications identifying and substantiating relevant community needs and detailing the ways that grant proposals will satisfy the statutory objectives.[8] Also required is the submission of a Housing Assistance Plan that, among numerous other things, surveys the housing stock in the applicant community, evaluates the community's housing assistance needs and projects the number of persons requiring assistance, the number of needed units and the general location of the proposed housing units.[9]

Once grant applications are submitted, Title I requires HUD to review them for compliance with statutory criteria and guidelines set out in accompanying regulations.[10] Title I also requires HUD to complete this review with considerable dispatch.[11] In particular, unless HUD acts within 75 days of receipt of properly submitted granted applications, they are "deemed [to be] approved." [12] The sole question in this suit, brought by the Town of East Hartford, a twice unsuccessful grant applicant, is whether HUD acted to disapprove the town's application as promptly as Title I requires.[13] If it did, and if it notified the town in an authorized manner, then defendants are entitled to prevail on their motion for summary judgment. If it did not act in timely and authorized fashion, then the Town of East Hartford prevails.

In brief outline, the undisputed facts indicate that East Hartford first submitted a grant application to HUD in early 1976. HUD promptly disapproved it. By telegram dated May 6, 1976, the agency notified the town that its application was deficient and could not be approved. Aside from the obvious effect of this notice, disapproval also meant that if the town intended to resubmit its application, it had to do so no later than January 15 of the following year unless this deadline was extended by the agency.[14]

Upon the Mayor's request, HUD granted East Hartford an extension for resubmitting its application. By letter dated December 22, 1976, the Director of HUD's Hartford Area Office informed the town that April 16, 1977 was an acceptable date for resubmission. But April 16, it was later discovered, was a Saturday, meaning that if April 16 remained the submission date, HUD would lose two days in the review process. This was so because under HUD regulations plans effectively submitted on weekends were deemed to have been submitted on the preceding Friday. With that concern in mind, HUD's Community Planning and Development Representative in the Hartford Area Office recommended that the date be changed to April 18, 1977, the succeeding Monday. HUD's Area Director apparently agreed with this recommendation because, by letter dated February 22, 1977 and addressed to East Hartford's Mayor, the Area Director stated that the date for submitting the town's application had been revised to April 18.

**5.** *Id.,* § 101(c)(5), 42 U.S.C. § 5301(c)(5) (Supp. V 1975).

**6.** *Id.,* § 101(c)(6), 42 U.S.C. § 5301(c)(6) (Supp. V 1975).

**7.** *Id.,* § 103, 42 U.S.C. § 5303 (Supp. V 1975).

**8.** *Id.,* § 104, 42 U.S.C. § 5304 (Supp. V 1975).

**9.** *Id.,* § 104(a)(4), 42 U.S.C. § 5304(a)(4) (Supp. V 1975).

**10.** *Id.,* § 104(c), 42 U.S.C. § 5304(c) (Supp. V 1975).

**11.** *Id.,* § 104(f), 42 U.S.C. § 5304(f) (Supp. V 1975).

**12.** *Id.*

**13.** Originally, the town challenged the decision disapproving its application as both untimely and substantively unsupported. Discovery, however, has convinced the town that this decision was in substance correct, leaving only the question of timeliness to be resolved.

**14.** *See* 24 C.F.R. § 570.300(a)(3) (1976).

This fact was later confirmed in a conversation between HUD officials and an assistant to East Hartford's Mayor. The substance of this conversation was that, while the Mayor's assistant would actually deliver the application on April 15, 1977 because of prior commitments on the agreed upon due date, the effective date of submission would still be April 18. As anticipated, the town's application was delivered to HUD on April 15, 1977.

Initial review of the town's application began promptly on April 19, 1977. This preliminary screening brought to light a number of substantive shortcomings in the town's submission. These included several deficiencies involving the town's Community Development Program. More importantly, others involved the Housing Assistance Plan completed by East Hartford, a statutorily-mandated and integral part of the application. In particular, figures used in the application were found to be inconsistent with generally available sources of information and calculations were discovered to reflect improper methods of computation.

HUD notified the town about the deficiencies detected during the preliminary review. By letter to East Hartford's Mayor dated May 5, 1977, the Area Director discussed these obstacles to approval at great length, making clear their impact on the chances for approval, and concluding with the expressed hope that the problems could be cleared up in a conciliatory manner. But for whatever reason the most critical deficiencies in the plan were never remedied to HUD's satisfaction. This development confronted the agency at the later stages of the review process with a situation of having to make a final decision on an applica-

tion that contained numerous recognized yet uncorrected deficiencies. The final outcome was obvious. After discussing the question with involved agency staff persons, the Deputy Assistant Secretary for Community Planning and Development came to the conclusion that the town's application could not be approved based on the developed administrative record.

This decision was conveyed to East Hartford by telegram [15] signed and dated July 1, 1977.[16] Agency logs indicate that the notice of disapproval was delivered to the Western Union Center at 4:07 p. m. on July 1 and transmitted to Connecticut shortly after 5:00 p. m. But Western Union did not deliver the telegram to East Hartford that day, although the customary practice was for the company to deliver communications within five hours of receipt. Apparently because of the lateness of the hour when transmittal was effected, Western Union did not dispatch an agent to deliver the telegram until the following day, a Saturday,[17] or, at the latest, the day after that.[18]

No company logs exist to confirm the exact time and date of delivery. The record does reveal, however, that the telegram was actually hand delivered to the town's Mayor as he was mowing his lawn during the holiday weekend. Beyond that, the record also indicates that the Mayor *customarily* did this chore on Saturdays, which would mean in this case July 2, 1977, the seventy-fifth day of the statutory period figuring April 18, 1977 as the submission date. Yet whether or not the Mayor kept to his customary practice *in this instance* remains in dispute.

Disapproval of East Hartford's application prompted the town to commence this lawsuit for declaratory and related injunc-

15. It should be pointed out that, in making its decision known to the town by means of a telegram, HUD was not departing from past practice. On the contrary, HUD had dispatched its earlier disapproval of East Hartford's application by telegram dated May 6, 1976. There is no suggestion that the town found the form of this earlier communication objectionable. If it did, East Hartford never made its objection known to the agency.

16. July 1 was the seventy-fourth day of the 75-day statutory review period figuring April 18 as the submission date. Figuring April 15 or April 16 as the starting point, July 1, 1977 fell outside the statutory time frame.

17. Saturday was the seventy-fifth day using April 18, 1977 as the beginning point.

18. Sunday was the seventy-sixth day.

tive relief. Plaintiffs seek a declaration that the adverse decision was unlawful and an injunction requiring HUD to fund the town's proposal. Plaintiffs do not fault the agency for turning their application down for the stated reasons of noncompliance with statutory and regulatory program standards. Rather, they contend that HUD failed to inform the town of the disapproval with the promptness that Title I requires. In addition, plaintiffs quarrel with the means chosen by HUD to communicate the disapproval. Both parties have moved for summary judgment.

## II. *HUD Acted on East Hartford's Application in a Timely Manner.*

Unlike comparable statutes that contemplate agency review of grant applications, Title I of the Housing and Community Development Act spells out a time frame for completion of the administrative process. The governing provision in Title I is 42 U.S.C. § 5304(f) (Supp. V 1975). Section 5304(f) provides that block grant applications, "if submitted after any date established by the Secretary for consideration of applications, shall be deemed approved within 75 days after receipt unless the Secretary informs the applicant of specific reasons for disapproval."

The 75-day review period established by section 5304(f) represents a compromise between the conflicting views of House and Senate sponsors. The Senate Bill called for administrative action on grant applications within 90 days of receipt.[19] By contrast, the House version set the time at 60 days.[20] The Bill that emerged from the House Conference Committee and that was eventually enacted into law compromised the differing deadlines at 75 days.[21]

But despite the various time frames set in these Bills, the central idea behind them is basically the same. It is simply to establish a reasonable yet fixed time period to govern agency action on a matter perceived by Congress to be important enough to warrant prompt attention.

The starting point for the review process specified in section 5304(f)[22] is the date a grant application is received by the agency. The statute is explicit on this point so long as the application is actually received by HUD *after* a submission date established by the agency. The statute is silent, however, regarding early submissions. But a fair regard for the statutory purpose of giving effect to the shared expectations of the parties requires the interpretation that if an application is submitted early, the 75 days are measured not from the date of receipt but rather from the established submission date. The same rule naturally holds true if an application is actually delivered to HUD on the appointed submission date.

Once an application is submitted, the agency has 75 days from the triggering date to complete the review process and inform the applicant of the final decision. *Whether or not* HUD finds that the application merits approval, it must act within the prescribed time period, or else the proposal is deemed to be approved irrespective of its merits.

The parties to this lawsuit are in apparent agreement concerning the effect of untimely action on the part of HUD. The effect is approval. Yet that is about the extent of their agreement. The parties strenuously disagree about the mechanics of the timeliness provision. Plaintiffs contend that the 75-day review period in this case commenced on April 15, 1977, the Friday preceding the Saturday April 16 submission date. Defendants dispute this. Defend-

**19.** *See generally* H.R.Conf.Rep. No. 93–1279, 93rd Cong., 2d Sess., at 126 (1974), U.S.Code Cong. & Admin.News 1974, p. 4273.

**20.** *Id.*

**21.** *Id.*

**22.** Section 5304(f) reads in pertinent part:

An application subject to subsection (c) of this section, if submitted after any date established by the Secretary for consideration of applications, shall be deemed approved within 75 days after receipt unless the Secretary informs the applicant of specific reasons for disapproval. . . .

ants insist that the period for review did not begin to run until April 18, 1977, the revised submission date. Plaintiffs also claim that HUD is mistaken about exactly what had to be done within the 75-day period to discharge the agency's review obligations. Defendants suggest that the agency need only have *dispatched* a notice of disapproval to comply with section 5304(f)'s timeliness requirement, while plaintiffs maintain that the statutory notice was late because it was not, or cannot be proved to have been, *received* by the town within the 75-day time frame.

■ 1. The question of the exact date when the review period in this case began to run turns on who in the agency set the revised submission date and whether that person possessed the requisite delegated authority to do so. The question is easily resolved. A search of the record reveals that, upon the request of the town's Mayor, HUD's Hartford Area Office extended the deadline for the submission of East Hartford's application from January 15, 1977 to April 16, 1977. This was accomplished by a letter signed by the Area Director.[23] The record also indicates that, once the Area Office realized that April 16 fell on a Saturday, it revised the submission date to April 18, 1977, the following Monday. This too was accomplished by a letter bearing the signature of the Area Director.[24]

Plaintiffs apparently recognize this series of events. Yet they claim that the Area Director lacked the authority to change the submission date from April 16 to April 18. Thus, the review period, under HUD's weekend regulation, commenced Friday, April 15, a date that would make clear the untimeliness of HUD's notice of disapproval. This argument, however, is implausible for two basic reasons. To begin with, if the Area Director indeed lacked the necessary authority to revise the town's submission date from April 16 to April 18, then similarly his decision changing the date from January 15 to April 16 was just as ineffective.

And if that is so, then the town's submission on April 15, far from being a day ahead of schedule, was actually three months late.

Moreover, a look at the statute and regulations bearing on the delegation of functions within HUD indicates that the Area Director was in fact possessed of the authority needed to revise East Hartford's submission date. 42 U.S.C. 3535(d) (1970) provides that "The Secretary may delegate any of his functions, powers, and duties to such officers and employees as he may designate." In addition, section 3535(d) allows the Secretary to "authorize such successive redelegations of such functions, powers, and duties as he may deem desirable." Implementing regulations appearing at 40 Fed. Reg. 5385–86 (Feb. 5, 1975) carry out this broad power to delegate responsibility under the Housing and Community Development Act. Specifically, these regulations redelegate to HUD Regional and Area Staff, including Area Directors, "the power and authority of the Assistant Secretary for Community Planning and Development [the Secretary's immediate delegate in the chain of command] with respect to Title I of the Housing and Community Development Act of 1974." Certain functions are excepted from this broad redelegation of power. But the authority to revise submission dates does not appear to fit within any of the excepted categories.

■ 2. This conclusion does not end the inquiry, however. Plaintiffs argue that even if April 18, 1977 is the triggering date for the 75-day review process, the agency was still late in discharging the review function entailed by section 5304(f). The assumption behind this argument is that the 75 days run until the applicant actually receives a notice of disapproval, and not merely until HUD dispatches the notice. Proceeding on that premise, plaintiffs reason, and taking April 18, 1977 as the submission date, the town had to receive the

---

**23.** *See* Affidavit of Harry Reese, Attachment D.

**24.** *See id.,* Attachment E.

disapproval notice by July 2, 1977,[25] the seventy-fifth day, or else its application qualifies as approved on account of untimeliness.

Plaintiffs' reading of section 5304(f) is not implausible.[26] The key word in the provision is "inform," and "inform" carries the connotation of a *completed* communication, suggesting that statutory notices of disapproval are effective only when received by grant applicants, and not when they are dispatched. Yet this seemingly reasonable suggestion is belied both by the legislative history behind section 5304(f) and by the obvious purpose of creating a fixed time period for agency review of grant applications.

The reasons why a fixed period for administrative review is important are apparent and compelling. Foremost lies in the fact that block grant applications are massive documents that require coordinated yet step-by-step examination by numerous authorities within the HUD hierarchy. Unless HUD can count on a definite time frame for completing review, the agency is apt to encounter troublesome problems in calendaring the several phases entailed by administrative review. Just as important is the fact that preliminary administrative screening frequently uncovers deficiencies in grant applications that are capable of being remedied through successive exchanges of information between the agency and the applicant. If, to act in a timely fashion, HUD is required to communicate decision on apparently deficient applications well ahead of the 75-day deadline, situa-

tions will inevitably arise where submissions that could have been approved have to be disapproved because there was not time enough at the final stages of review to receive and process supplemental information. This prospect is doubly unfortunate in view of the remedial purposes embodied in Title I.

The legislative history behind section 5304(f) also supports the view that HUD has the full 75 days to act on block grant applications. While the House[27] and Senate Reports[28] do not settle the question, the House Conference Report[29] does. The Conference Report makes clear that the time period specified in Title I's review provision was meant to set a fixed and outermost point for "the HUD Secretary to *act on* applications for community development assistance."[30] The significance of the "act on" language is manifest. If the agency is meant to have the full period provided in the statute to "act on" an application, all that reasonably can be expected of it is that it timely dispatch a notice explaining its decision. To read section 5304(f) otherwise would effectively deprive the agency of the full notice period and measure timeliness on the vagaries of the mail and the uncertainties of process-serving.

3. Proceeding on this basis, and figuring April 18, 1977 as the date that began the running of the 75-day review period, HUD had until July 2, 1977 to pass on East Hartford's application and dispatch the required notice of disapproval. When it took these steps on July 1, 1977, the agency accomplished all that the statute requires.

---

**25.** As stated earlier, the only evidence concerning the actual date of receipt is inconclusive testimony by the town's Mayor. This testimony indicates that the Mayor received HUD's telegraphic notice either on Saturday, July 2, 1977, which would have been timely, or on Sunday, July 3, 1977, which would have been late. Ordinarily a crucial uncertainty of this sort would make disposition of the case by summary judgment improper since Fed.R. Civ.P. 56 envisions final decisions based on undisputed material facts. The Court is of the opinion, however, that for reasons to be discussed later this uncertainty is not material to the timeliness issue.

**26.** For reference, the relevant text of section 5304(f) is set out in note 22, *supra.*

**27.** *See* H.R.Rep. No. 93–1114, 93rd Cong., 2d Sess. at 49 (1974).

**28.** *See* S.Rep. No. 93–693, 93rd Cong., 2d Sess. at 135 (1974), U.S.Code Cong. & Admin.News 1974, p. 4273.

**29.** *See* H.R.Conf.Rep. No. 93–1279, 93rd Cong., 2d Sess. at 126 (1974), U.S.Code Cong. & Admin.News 1974, p. 4273.

**30.** *Id.* (emphasis supplied).

### III. *A Signed Telegram Sufficed as Notice of Disapproval.*

█ Beyond untimeliness, plaintiffs challenge the notice of disapproval sent by HUD because the communication took the form of a telegram rather than a letter. The suggestion is that because the agency departed from the customary practice of using the mails,[31] the decision on the town's application is for that reason alone invalid. Plaintiffs' point is not well taken.

Section 5304(f) is silent on exactly what kinds of notice are effective. But the legislative history of the provision indicates that all that is required is "written notice."[32] There is no expressed preference for one kind of written notice over any other.

Of course, if the agency were to choose a means of communicating that was unlikely to reach applicants, its selection might be called into question and rightly so. But here the agency used a method just as reliable as the mail if not more so, and merely because it departed from what was customary is hardly grounds for invalidating it.

### IV. *Disposition.*

For the foregoing reasons, the Court is of the opinion that defendants' motion for summary judgment must be granted. For these same reasons, the Court is convinced that plaintiffs' crossmotion for summary judgment must be denied. An order in accordance with the foregoing will be issued of even date herewith.

---

**31.** *See* 24 C.F.R. § 570.306(c) (1976) ("mailed a notification to the applicant within seventy-five days").

**32.** S.Rep. No. 93–693, 93rd Cong., 2d Sess. at 135 (1974), U.S.Code Cong. & Admin.News 1974, p. 4273.